Grace L. Pan
Lisa T. Simpson (admitted *pro hac vice*)
Nicolas H. Lam (admitted *pro hac vice*)
**Orrick, Herrington & Sutcliffe LLP**
51 W. 52nd Street
New York, NY 10019
Tel:  212-506-3505
Fax:  212-506-5151
gpan@orrick.com

*Attorneys for Defendants Sony Computer*
*Entertainment America LLC and Sony*
*Computer Entertainment Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| VIRAG, S.R.L., a foreign corporation,<br><br>Plaintiff,<br><br>v.<br><br>SONY COMPUTER ENTERTAINMENT AMERICA LLC and SONY COMPUTER ENTERTAINMENT, INC.,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case No.:  2:14-cv-04786-KM-MAH<br><br>**ORAL ARGUMENT REQUESTED**<br><br>MOTION DAY:  Dec. 1, 2014 |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

## Table of Contents

I.    PRELIMINARY STATEMENT ..................................................................1

II.   BACKGROUND ......................................................................................3

III.  VIRAG'S CLAIMS SHOULD BE DISMISSED FOR FAILURE TO
      STATE A CLAIM ....................................................................................5

      A.    Plaintiff Must Plead Sufficient Facts to State a Plausible Claim.........6

      B.    Plaintiff's First Cause of Action for Violation of the Right Of
            Publicity Must Be Dismissed Because a Corporation Does Not
            Have a Right of Publicity ....................................................................7

      C.    The First Amendment Requires Dismissal of Plaintiff's Second,
            Third, and Fourth Causes of Action ....................................................9

      D.    Plaintiff's Fourth Cause of Action for Trademark Dilution Also
            Must Be Dismissed Because VIRAG Failed to, And Cannot,
            Allege That Its Marks Are Famous ....................................................15

      E.    Plaintiff Is Not Entitled to Statutory Damages or Treble
            Damages ...............................................................................................18

IV.   CONCLUSION.........................................................................................19

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................6, 12, 16, 17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................6, 12, 16, 17

*Boarding Sch. Review, LLC v. Delta Career Educ. Corp.*,
    No. 11-cv-8921, 2013 WL 6670584 (S.D.N.Y. Mar. 29, 2013) ........................17

*Brown v. Elec. Arts, Inc.*,
    724 F.3d 1235 (9th Cir. 2013) .........................................................11, 12, 13, 15

*Brown v. Entm't Merchs. Ass'n*,
    131 S. Ct. 2729 (2011)..........................................................................................9

*Buck v. Hampton Twp. Sch. Dist.*,
    452 F.3d 256 (3d Cir. 2006) .............................................................................3, 4

*Carroll Shelby Licensing, Inc. v. Superperformance Int'l, Inc.*,
    251 F. Supp. 2d 983 (D. Mass. 2002)..................................................................18

*Caterpillar Inc. v. Walt Disney Co.*,
    287 F. Supp. 2d 913 (C.D. Ill. 2003)..................................................................14

*CIT Grp., Inc. v. Citicorp*,
    20 F. Supp. 2d 775 (D.N.J. 1998).......................................................................16

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp., Inc.*,
    886 F.2d 490 (2d Cir. 1989) ...............................................................................10

*Dillinger, LLC v. Elec. Arts, Inc.*,
    101 U.S.P.Q. 2d 1612, 2011 WL 2457678
    (S.D. Ind. June 16, 2011).....................................................................11, 12, 13

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*,
    547 F.3d 1095 (9th Cir. 2008) ....................................................................*passim*

*Eagle's Eye, Inc. v. Ambler Fashion Shop, Inc.*,
    627 F. Supp. 856 (E.D. Pa. 1985) ........................................................8

*ETW Corp. v. Jireh Publ'g, Inc.*,
    332 F.3d 915 (6th Cir. 2003) ............................................................10

*Facenda v. N.F.L. Films, Inc.*,
    542 F.3d 1007,1018 (3d Cir. 2008) ...................................................10

*Garruto v. Longo*,
    No. 12-cv-2668, 2012 WL 1981838 (D.N.J. June 1, 2012) ...............19

*Gottlieb Dev. LLC v. Paramount Pictures Corp.*,
    590 F. Supp. 2d 625 (S.D.N.Y. 2008) ...............................................14

*Green v. Fornario*,
    486 F.3d 100 (3d Cir. 2007) ........................................................15, 17

*Hart v. Elec. Arts, Inc.*,
    717 F.3d 141 (3d Cir. 2013) ..............................................................7

*Hassler v. Sovereign Bank*,
    644 F. Supp. 2d 509 (D.N.J. 2009) *aff'd*, 374 F. App'x 341
    (3d Cir. 2010)...............................................................................6, 8

*Heller Inc. v. Design Within Reach, Inc.*,
    No. 09-cv-1909, 2009 WL 2486054 (S.D.N.Y. Aug. 14, 2009) .......17

*Jablonski v. Pan Am. World Airways, Inc.*,
    863 F.2d 289, 292 (3d Cir. 1988) ......................................................6

*Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*,
    868 F. Supp. 2d 172 (S.D.N.Y. 2012) ...............................................15

*Luv N' Care, Ltd. v. Regent Baby Prods. Corp.*,
    841 F. Supp. 2d 753 (S.D.N.Y. 2012) ...................................15, 16, 17

*Madama v. Genesis Rehab Servs.*,
    No. 12-cv-1451, 2014 WL 3695976 (D.N.J. July 24, 2014)...............7

*McFarland v. Miller*,
    14 F.3d 912 (3d Cir. 1994) ................................................................7

*Novalogic, Inc. v. Activision Blizzard*,
No. 12-cv-4011, 2013 WL 8845232 (C.D. Cal. June 18, 2013) .......................13

*Oliveira v. Frito-Lay, Inc.*,
No. 96-cv-9289, 1999 WL 20849 (S.D.N.Y. Jan. 15, 1999) *aff'd* in
part, vacated in part, 251 F.3d 56 (2d Cir. 2001) .................................................4

*Parks v. LaFace Records*,
329 F.3d 437 (6th Cir. 2003) .....................................................................10

*Playboy Enters. v. Universal Tel-A-Talk*,
No. 96-cv-6961, 1998 WL 288423 (E.D. Pa. June 3, 1998) .............................18

*Rogers v. Grimaldi*,
875 F.2d 994 (2d Cir. 1989) ......................................................................10

*Seale v. Gramercy Pictures*,
949 F. Supp. 331 (E.D. Pa. 1996)............................................................10, 13

*Shields v. Zuccarini*,
254 F.3d 476 (3d Cir. 2009) ......................................................................19

*Smith v. California*,
361 U.S. 147 (1959)......................................................................................9

*Time, Inc. v. Hill*,
385 U.S. 374 (1967)......................................................................................9

*Trade Media Holdings Ltd. v. Huang & Assocs.*,
123 F. Supp. 2d 233 (D.N.J. 2000)...............................................................16

*Univ. of Ala. Bd. of Trs. v. New Life Art, Inc.*,
683 F.3d 1266 (11th Cir. 2012) .......................................................9, 10, 12, 13

*Warren Gen. Hosp. v. Amgen Inc.*,
643 F.3d 77 (3d Cir. 2011) ...........................................................................6

*Westchester Media v. PRL USA Holdings, Inc.*,
214 F.3d 658 (5th Cir. 2000) .......................................................................10

*Wham-O, Inc., v. Paramount Pictures Corp.*,
286 F. Supp. 2d 1254 (N.D. Cal. 2003)...........................................................14

iv

**State Cases**

*Bear Foot, Inc. v. Chandler*,
    965 S.W.2d 386 (Mo. Ct. App. 1998) ................................................................8

*Bisbee v. John C. Conover Agency, Inc.*,
    452 A.2d 689 (N.J. Super. Ct. App. Div. 1982) ..................................................7

*G.D. v. Kenny*,
    15 A.3d 300 (N.J. 2011) ......................................................................................7

**Federal Statutes**

15 U.S.C.
    § 1114........................................................................................................................5
    § 1117..................................................................................................................18, 19
    § 1125.......................................................................................................5, 15, 16, 19
    § 1141h.....................................................................................................................16

28 U.S.C. § 1404 ..........................................................................................................5

**Rules**

Fed R. Civ. P. 12(b)(6)........................................................................................1, 5, 6, 19

**Other Authorities**

*McCarthy on Trademarks and Unfair Competition* (4th ed.)....................................8

Restatement (Second) of Torts § 652....................................................................7, 8

Defendants Sony Computer Entertainment America LLC ("SCEA") and

Sony Computer Entertainment Inc. ("SCEI") submit this memorandum of law in

support of their motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, for an order dismissing the Complaint For Damages and Injunctive

Relief, dated July 31, 2014 ("Complaint") with prejudice for failure to state a claim

and to strike certain claims for damages.

## I.    PRELIMINARY STATEMENT

Plaintiff VIRAG, S.R.L. ("Plaintiff" or "VIRAG") is a flooring retailer

located in Italy.  It alleges no ties to the United States, let alone New Jersey, yet

has filed suit in this District against two separate Sony entities complaining that its

trademark has appeared in the *Gran Turismo*® racing games made for the popular

Sony PlayStation® console.  For years, VIRAG has sponsored a race in Monza,

Italy called the Rally of Monza, and has displayed its trademark at that race as a

sponsor.  The Rally of Monza is one of over 20 tracks included in the *Gran

Turismo*® racing games at issue.  The games strive to give the user the most

realistic racing experience possible.  As part of that goal, the *Gran Turismo*® games

capture the race tracks as they find them.  In this case, the Monza track included a

VIRAG banner.  That VIRAG banner appeared both in *Gran Turismo*®5, which

was released in 2010, and *Gran Turismo*®6, which was released in 2013, along

with numerous other brands displayed at the over 20 other tracks in the games.

1

Unhappy with its appearance in the game despite its desire to be associated with the track, VIRAG brought suit alleging violation of the right of publicity, trademark infringement, unfair competition and dilution.  However, as set forth below, Plaintiff's claims must be dismissed.

Plaintiff's right of publicity claim must be dismissed for the simple reason that a corporation does not hold a right of publicity.

Plaintiff's infringement, unjust enrichment and dilution claims under the Lanham Act fare no better.  They each must be dismissed in deference to the First Amendment.  The Supreme Court has held that video games are entitled to First Amendment protection.  As such, Plaintiff's claims are viable only if (1) the use of the VIRAG mark has no artistic relevance to the game – it clearly does; and (2) SCEA explicitly misled consumers as to VIRAG's sponsorship or endorsement of the game – no such explicit statement is or can be alleged.

Plaintiff's dilution claim fails for the additional reason that its VIRAG mark is not famous in the United States.  VIRAG has not attempted to allege that it is and that is because it simply cannot.

In the event that any of Plaintiff's Lanham Act claims survive this motion, Plaintiff mistakenly seeks categories of damages under the Lanham Act that are not applicable to the claims they assert.  Those claims should be stricken.

## II.   BACKGROUND

Plaintiff VIRAG is an Italian company that markets and sells flooring products.  *See* Compl. ¶¶ 1, 6.[1]  Plaintiff has no members or shareholders that are United States citizens.  *See id.* ¶ 6.  Despite its apparent lack of a United States presence, Plaintiff has registered through the Madrid Protocol two trademarks with the U.S. Patent and Trademark Office, "VIRAG®" (Reg. No. 4,427,060) and "e Evolution VIRAG®" (Reg. No. 3,462,406).  *See id.* ¶¶ 32, 33.  The registrations are for goods such as flooring and insulation.  *See* Declaration of Lisa T. Simpson ("Simpson Decl.") at Exs. 1 and 2.[2]

Every year, VIRAG sponsors the Rally of Monza, a car race that takes place at the Monza racetrack in Italy.  *See* Compl. ¶ 1.  Since 2006, a banner with the VIRAG name has appeared on a bridge over the track at each race.  *See id.*

Defendant SCEA is a Delaware limited liability company having its principal place of business in San Mateo, California.  *See* Compl. ¶ 7.  Plaintiff

---

[1] The facts alleged by Plaintiff in the Complaint are accepted as true solely for purposes of this motion.

[2]  Plaintiff stated in the Complaint that its registrations were attached as Exhibits 1 and 2 to the Complaint, but they were not.  Since these registrations were specifically referenced in the Complaint, they are incorporated and this Court may consider them on this motion.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (on a motion to dismiss, the court "may consider . . . any matters incorporated by reference or integral to the claim") (internal quotation marks omitted).

3

alleges that SCEA is the "manufacturer and distributor of the very popular Sony PlayStation gaming systems." *Id.* At issue in this case is Sony's *Gran Turismo*® series of games, specifically *Gran Turismo*®5 (released in 2010) and *Gran Turismo*®6 (released in 2013), which SCEA has "marketed and sold . . . throughout the United States . . . ." Compl. ¶ 9. *Gran Turismo*® is a "race car driving simulation game." Its packaging promotes the game as "The Real Driving Simulator," offering "the most realistic and complete racing experience."[3] The games are purely driving games—they are rated "E for Everyone" and do not contain violent or more mature content that some other video games, including other driving games, contain. Nor does Plaintiff allege that they do. The games include over "1,000 detailed cars" and "20+ tracks." One of those tracks is the Monza track. Compl. ¶ 3. True to life, the virtual Monza track in *Gran Turismo*®5 and *Gran Turismo*®6 includes the bridge with the VIRAG banner. *See* Compl. ¶ 3.

Plaintiff brought suit on July 31, 2014, alleging the following claims based on the inclusion of Plaintiff's VIRAG trademark in the *Gran Turismo*® games:

---

[3] With the filing of this motion, SCEA has lodged with the Court copies of *Gran Turismo*®5 and *Gran Turismo*®6 and also a PlayStation®3 console. This Court can and should consider the games and their packaging on this motion as they are expressly incorporated into the Complaint. *See Buck*, 452 F.3d at 260; *Oliveira v. Frito-Lay, Inc.*, No. 96-cv-9289, 1999 WL 20849, at *2 (S.D.N.Y. Jan. 15, 1999) *aff'd* in part, vacated in part, 251 F.3d 56 (2d Cir. 2001) (considering television commercial submitted by videotape in ruling on motion to dismiss where "integral to the complaint").

(1) violation of the right of publicity; (2) trademark infringement pursuant to 15

U.S.C. § 1114; (3) unfair competition pursuant to 15 U.S.C. § 1125(a); and

(4) dilution pursuant to 15 U.S.C. § 1125(d).  Plaintiff purports to name not only

SCEA as a defendant, but also SCEI—a Japanese corporation headquartered in

Tokyo, Japan.[4]

## III.   VIRAG'S CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

VIRAG's Complaint must be dismissed for failure to state a claim upon

which relief can be granted.  *See* Fed R. Civ. P. 12(b)(6).  VIRAG's First Cause of

Action for violation of the right of publicity is fatally flawed because only people,

not companies, have a right of publicity.  Plaintiff's Second, Third, and Fourth

Causes of Action under the Lanham Act are barred by the First Amendment.

Plaintiff's Fourth Cause of Action for trademark dilution also must be dismissed

because VIRAG has failed to plead, and cannot plead, that its alleged trademarks

have the requisite fame in the United States.  Lastly, to the extent any portion of

VIRAG's Second, Third, and Fourth Causes of Action survive, its claims for treble

and statutory damages should be stricken from the Complaint because those

damages are only permitted in limited circumstances clearly not applicable here.

---

[4] Because of the lack of connection between this action and its parties and the
District of New Jersey, Defendants will be filing a separate motion to transfer this
case to the Northern District of California, SCEA's home district, pursuant to 28
U.S.C. § 1404.

### A.     Plaintiff Must Plead Sufficient Facts to State a Plausible Claim

To sufficiently state a claim, Plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (plaintiff must "plead sufficient factual matter to show that the claim is facially plausible, thus enabling the court to draw the ***reasonable inference*** that the defendant is liable for the misconduct alleged") (emphasis added) (internal quotation marks omitted).  When amendment of a flawed claim "would not cure the deficiency in the original pleading or if the proposed amended pleading would not survive a motion to dismiss," a court may dismiss the claim with prejudice. *See Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 520-21 (D.N.J. 2009) (citing *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988)), *aff'd*, 374 F. App'x 341 (3d Cir. 2010).  Here, any amendment would be futile as Plaintiff cannot cure the deficiencies in its Complaint.

**B.     Plaintiff's First Cause of Action for Violation of the Right Of Publicity Must Be Dismissed Because a Corporation Does Not Have a Right of Publicity**

In its First Cause of Action, VIRAG alleges that it "has a right to control the use of its name . . ." (Compl. ¶ 27) and Defendants "used" VIRAG's name without authorization in the *Gran Turismo*® games (Compl. ¶¶ 28, 29).  As such, Plaintiff asserts a claim for violation of the right of publicity on behalf of itself as a corporation.

The right of publicity is "'the right of an ***individual***, especially a public figure or celebrity, to control the commercial value and exploitation of his name and picture or likeness and to prevent others from unfairly appropriating'" that value.  *McFarland v. Miller*, 14 F.3d 912, 918 (3d Cir. 1994) (emphasis added); *Madama v. Genesis Rehab Servs.*, No. 12-cv-1451, 2014 WL 3695976, at *5 (D.N.J. July 24, 2014).  In defining the right of publicity, New Jersey courts have repeatedly relied on § 652C of the Restatement (Second) of Torts.  *See Bisbee v. John C. Conover Agency, Inc.*, 452 A.2d 689, 692-93 (N.J. Super. Ct. App. Div. 1982); *G.D. v. Kenny*, 15 A.3d 300, 321 (N.J. 2011); *Hart v. Elec. Arts, Inc.*, 717 F.3d 141, 151 (3d Cir. 2013) ("[t]he current incarnation of the right of publicity in New Jersey is that set forth in" Restatement § 652C).  But, the Restatement makes very clear that a "corporation . . . has no personal right of privacy," and "therefore

no cause of action" for violation of the right covered by § 652C.  *See* Restatement § 652I, comment c.[5]

Other courts that have decided this specific issue have followed the Restatement's approach and found that corporations lack a right of publicity.  *See Eagle's Eye, Inc. v. Ambler Fashion Shop, Inc.*, 627 F. Supp. 856, 862 (E.D. Pa. 1985) (dismissing right of publicity claim "alleged to inhere in a corporate trademark"); *Bear Foot, Inc. v. Chandler*, 965 S.W.2d 386, 389 (Mo. Ct. App. 1998) (affirming dismissal of right of publicity claim because "there is no right of publicity in a corporation"); *McCarthy on Trademarks and Unfair Competition* (4th ed.) at § 28:10 ("Neither a corporation nor any other form of business organization has a right of privacy or publicity.").

VIRAG's right of publicity claim should be dismissed for failure to state a claim.  Moreover, since there is no set of facts on which Plaintiff could allege that it possesses a right of publicity, the dismissal should be with prejudice.  *See Hassler*, 644 F. Supp. 2d at 520-21.

---

[5] Plaintiff does not allege in the Complaint under what state's law it brings its right of publicity claim.  Defendants assume, for the purposes of this motion, that Plaintiff's claim is brought under New Jersey law because it was filed here.  In any event, Defendants have not located any law in any jurisdiction that suggests a company has a protectable right of publicity.

## C.    The First Amendment Requires Dismissal of Plaintiff's Second, Third, and Fourth Causes of Action

The Supreme Court has held that video games, such as *Gran Turismo*®5 and *Gran Turismo*®6, are expressive speech entitled to the full protection of the First Amendment.  *See Brown v. Entm't Merchs. Ass'n*, 131 S. Ct. 2729, 2733 (2011). "Like the protected books, plays, and movies that preceded them, video games communicate ideas—and even social messages—through many familiar literary devices (such as characters, dialogue, plot, and music) and through features distinctive to the medium (such as the player's interaction with the virtual world)." *Id.*  That the *Gran Turismo*® games are "sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment." *Time, Inc. v. Hill*, 385 U.S. 374, 397 (1967) (internal quotation marks omitted); *Smith v. California*, 361 U.S. 147, 150 (1959) ("It is of course no matter that the dissemination [of a work] takes place under commercial auspices.").

When a trademark claim implicates a defendant's First Amendment rights, courts "construe the Lanham Act narrowly" (*Univ. of Ala. Bd. of Trs. v. New Life Art, Inc.*, 683 F.3d 1266, 1278 (11th Cir. 2012)), holding that it "'appl[ies] to artistic works **only** where the public interest in avoiding consumer confusion **outweighs** the public interest in free expression.'"  *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008) (emphasis in original).  *See*

*also ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 937 (6th Cir. 2003) (balancing in favor of free expression "preclude[s] application of the [Lanham] Act").

The *Rogers* test, first articulated by the Second Circuit in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), sets forth the "best test" for balancing the First Amendment with the Lanham Act. *Parks v. LaFace Records*, 329 F.3d 437, 451-52 (6th Cir. 2003). Although not yet expressly adopted by the Third Circuit[6], the *Rogers* test is generally accepted and has been widely applied, both within this Circuit and in other Circuits, including the Court of Appeals for the Second, Fifth, Sixth, Ninth, and Eleventh Circuits. *See E.S.S. Entm't*, 547 F.3d at 1099 (9th Cir.); *Univ. of Ala.*, 683 F.3d at 1278 (11th Cir.); *ETW Corp.*, 332 F.3d at 928 (6th Cir. 2003); *Westchester Media v. PRL USA Holdings, Inc*., 214 F.3d 658, 664-65 (5th Cir. 2000); *Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp., Inc.*, 886 F.2d 490, 495 (2d Cir. 1989); *Seale v. Gramercy Pictures*, 949 F. Supp. 331, 339 (E.D. Pa. 1996).

The *Rogers* test holds that allegedly infringing use is actionable only if: (1) the use of the mark "has no artistic relevance to the underlying work whatsoever" or (2) if it has some artistic relevance, the use "explicitly misleads as to the source or content of the work." *E.S.S. Entm't*, 547 F.3d at 1099 (citing

---

[6] In *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007,1018 (3d Cir. 2008), the Third Circuit found the speech before it to be commercial, and thus determined that it need not reach the issue of whether to adopt the *Rogers* test in cases of expressive speech.

*Rogers*, 875 F.2d at 999).  Applying this well-accepted test, VIRAG's claims fail

as a matter of law and should be dismissed.

    ***Artistically relevant***.  To satisfy the artistic relevance prong, "the level of

relevance merely must be above zero." *E.S.S. Entm't*, 547 F.3d at 1100; *Brown v.*

*Elec. Arts, Inc.*, 724 F.3d 1235, 1243 (9th Cir. 2013).  This black-and-white rule of

artistic relevance is appropriate because "it is not the role of the Court[s] to

determine how meaningful the relationship between a trademark and the content of

a literary work must be." *Dillinger, LLC v. Elec. Arts, Inc.*, 101 U.S.P.Q. 2d 1612,

2011 WL 2457678, at *6 (S.D. Ind. June 16, 2011) (citing *Rogers*, 875 F.2d at

999); *Brown*, 724 F.3d at 1243.  Here, the replication of the VIRAG banner on the

Monza track was artistically relevant to the game developers' goal of realism.  Just

as some painters attempt to make their work as true-to-life as possible, so did the

creators of *Gran Turismo*®.  That much is evident from the packaging of the *Gran*

*Turismo*® games, which are billed as "The Real Driving Simulator," offering the

"most realistic and complete racing experience" with "over 1,000 detailed cars"

and "20+ tracks."  Because of this focus on realism, the 20+ tracks are replicated in

exacting detail, down to the precise banking of the turns, shape of the buildings,

texture of the road surface, and, yes, even the appearance of banners.  As in the

real world, the VIRAG banner on the bridge over the Monza track appears there in the virtual world.[7]

Such realistic portrayals are indeed works of artistic expression under the law.  *See Brown*, 724 F.3d at 1243 (finding it "obvious" that realistic recreation of famous football player's likeness "has at least some artistic relevance" to the game); *Univ. of Ala.*, 683 F.3d at 1278-79 (depicting school's trademarked uniforms was "artistically relevant to the expressive underlying works because the uniforms' colors and designs are needed for a realistic portrayal").

*Not explicitly misleading*.  Plaintiff also fails this prong of the test.  The "mere use of a trademark alone cannot suffice to make such use explicitly misleading."  *E.S.S. Entm't*, 547 F.3d at 1100.  "It is key here that the creator must *explicitly* mislead consumers."  *Brown*, 724 F.3d at 1245 (emphasis in original). Accordingly, "[t]o be 'explicitly misleading,' the defendant's work must make some *affirmative statement* of the plaintiff's sponsorship or endorsement, beyond the mere use of plaintiff's name or other characteristic."  *Dillinger*, 2011 WL 2457678 at *6 (emphasis added).  VIRAG's Complaint is devoid of any allegation of such a statement by SCEA or SCEI.  Moreover, Plaintiff cannot allege such a

---

[7] VIRAG makes only a conclusory allegation to the contrary:  that the use of the VIRAG mark "has no artistic relevance to the Gran Turismo game."  Compl. ¶ 36. The Court need not credit this conclusory and unsupported allegation.  *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.  The games make clear that the relevance of the mark is certainly "above zero."

12

statement as it is clear from the packaging, manuals, and contents of the games themselves that no such statement exists. *See Univ. of Ala.*, 683 F.3d at 1282 (affirming dismissal where defendant "never explicitly misled consumers as to the source of the items").

Courts have routinely found, under strikingly similar circumstances, that the use of a mark in video games is not actionable under the First Amendment. For example, in *E.S.S. Entm't*, the manufacturer of the video game *Grand Theft Auto* created a virtual Los Angeles that allegedly included a local strip club's logo and business in its virtual city. *See E.S.S. Entm't*, 547 F.3d at 1097. The Ninth Circuit dismissed the Lanham Act claims, finding that including the logo and business did "indeed have at least 'some artistic relevance'" to the game, and its mere inclusion in the game could not, as a matter of law, be explicitly misleading. *See id.* at 1100-01. Similarly, in *Dillinger,* the court found that the use of the plaintiff's "Dillinger" trademark in the *Godfather* video games as the name of a gun was not actionable on First Amendment grounds. *See Dillinger*, 2011 WL 2457678, at *4-8. *See also Brown*, 724 F.3d at 1244-48 (use of a famous football player's trademarked likeness in *Madden NFL* game permitted by First Amendment); *Novalogic, Inc. v. Activision Blizzard*, No. 12-cv-4011, 2013 WL 8845232, at *10-13 (C.D. Cal. June 18, 2013) (defendant's use of plaintiff's "Delta Force" mark in *Modern Warfare 3* game permitted); *Seale*, 949 F. Supp. at 340

13

(considering use of the plaintiff's name to promote a film, book and video, and finding "as a matter of law that the Defendants' use of [plaintiff's name] . . . is not actionable as a violation of section 43(a) of the Lanham Act on the grounds that the First Amendment guarantee of freedom of expression outweighs any potential risk that the Defendants' use . . . may implicitly suggest that the Plaintiff endorsed the film or the pictorial history book").

Other courts have similarly limited the application of the Lanham Act to account for First Amendment concerns by simply finding no likelihood of consumer confusion when a plaintiff's mark appears in an expressive work.  *See Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 635 (S.D.N.Y. 2008) (granting motion to dismiss because plaintiff's "assertion that the appearance of its trademark in the Film would confuse ordinarily prudent consumers as to [ ] sponsorship or affiliation… is simply not plausible"); *Caterpillar Inc. v. Walt Disney Co.*, 287 F. Supp. 2d 913, 919-20 (C.D. Ill. 2003) ("the mere appearance of a Ford Taurus in a garden variety car chase scene" is not alone sufficient to support a trademark infringement claim); *Wham-O, Inc., v. Paramount Pictures Corp.*, 286 F. Supp. 2d 1254 (N.D. Cal. 2003) (finding appearance of "Slip 'N Slide" mark in defendant's film "will not spur any likelihood of confusion").  These decisions similarly support the dismissal of Plaintiff's Lanham Act claims here.

14

Because plaintiff cannot plausibly allege a Lanham Act claim given the overriding concerns of the First Amendment, Plaintiff's Lanham Act claims should be dismissed with prejudice.  *See Brown*, 724 F.3d at 1240-48 (affirming grant of motion to dismiss Lanham Act claims on First Amendment grounds); *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172, 177-84 (S.D.N.Y. 2012) (granting motion to dismiss Lanham Act claims based on appearance of imitation Louis Vuitton in the film *The Hangover: Part II*).

### D.   Plaintiff's Fourth Cause of Action for Trademark Dilution Also Must Be Dismissed Because VIRAG Failed to, And Cannot, Allege That Its Marks Are Famous

The "key requirement" of a trademark dilution claim under 15 U.S.C. § 1125(c) is that the allegedly diluted mark be "famous" within the United States. *Green v. Fornario*, 486 F.3d 100, 105 (3d Cir. 2007).  In 2006, Congress amended § 1125(c) to define a famous mark as one that is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."  15 U.S.C. § 1125(c)(2)(A); *Luv N' Care, Ltd. v. Regent Baby Prods. Corp.*, 841 F. Supp. 2d 753, 757-58 (S.D.N.Y. 2012).  This is a "rigorous standard, as it extends protection only to highly distinctive marks that are well-known throughout the country."  *Green*, 486 F.3d at 105.  The 2006 amendment of § 1125(c) further "reject[s] dilution claims based on niche fame, *i.e.* fame limited to a particular channel of trade, segment of industry or service, or

geographic region." *Luv N' Care*, 841 F. Supp. 2d 753, 757-58 (S.D.N.Y. 2012) (internal quotation marks omitted).

   Here, Plaintiff makes only the conclusory allegation that "the VIRAG mark is famous." Compl. ¶46. That is not sufficient to allege fame. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. Plaintiff makes no allegations at all that its marks are even used in the United States, let alone that they have achieved fame.[8] Indeed, Plaintiff cannot make such an allegation. The types of marks that have been held sufficiently famous to qualify for protection under this section of the Lanham Act are marks that the general public is thoroughly familiar with, like Coca-Cola. VIRAG is not one of those marks. *See CIT Grp., Inc. v. Citicorp*, 20 F. Supp. 2d 775, 794 (D.N.J. 1998) (dismissing claim over trademark "THE CIT Group" for lack of fame); *Trade Media Holdings Ltd. v. Huang & Assocs.*, 123 F. Supp. 2d 233, 243 (D.N.J. 2000) ("Asian Sources" found not famous on motion for summary judgment).

   It also does not matter how famous the VIRAG mark may or may not be in Italy or Europe more generally. VIRAG must be famous here in the United States among United States consumers. *See* 15 U.S.C. § 1125(c)(2)(A) ("[A] mark is

---

[8] Since VIRAG filed its trademark applications under the Madrid Protocol (Section 66 of the Lanham Act), it was not required to show any evidence of actual use in the United States to obtain its registrations. *See* 15 U.S.C. § 1141h(a)(3).

famous if it is widely recognized by the general consuming public of the United States."); *Green*, 486 F.3d at 105.  Plaintiff does not (and cannot) so allege.

At best, Plaintiff alleges that one of its two marks, the VIRAG mark, is "well-known ***in the flooring industry***."  Compl. ¶ 14 (emphasis added).  While that again is an unsupported conclusory allegation,  *Twombly*, 550 U.S. at 555 and *Iqbal*, 556 U.S. at 678, even if it were credited as true, it is exactly the type of "niche fame" that courts routinely find insufficient to establish a claim for dilution. *See Luv N' Care*, 841 F. Supp. 2d 753, 757-58 (S.D.N.Y. 2012) (dismissing dilution claim where plaintiff pled "fame among baby product consumers"); *Boarding Sch. Review, LLC v. Delta Career Educ. Corp.*, No. 11-cv-8921, 2013 WL 6670584, at *7 (S.D.N.Y. Mar. 29, 2013) (dismissing dilution claim where the "allegations, at best, make it plausible that their Marks are recognized within the niche market of for-profit, post-secondary schools"); *Heller Inc. v. Design Within Reach, Inc.*, No. 09-cv-1909, 2009 WL 2486054, at *4 (S.D.N.Y. Aug. 14, 2009) (dismissing dilution claim based on fame in "contemporary furniture niche of the population").

Given that Plaintiff has not and cannot satisfy the "rigorous standard" of fame by showing that its VIRAG mark has become widely distinctive and well-known among the consuming United States public, its dilution claim must be dismissed with prejudice.

17

**E.      Plaintiff Is Not Entitled to Statutory Damages or Treble Damages**

VIRAG has prayed for statutory damages and treble damages in connection with its Second, Third, and Fourth Causes of Action.  *See* Compl. ¶¶ 38, 44, 52, and corresponding prayers for relief.  These forms of relief, however, are not available to VIRAG.

With respect to statutory damages, the Lanham Act provides for statutory damages in only two cases:  (1) the use of a counterfeit mark (15 U.S.C. § 1117(c)); or (2) for cybersquatting (15 U.S.C. § 1117(d)).  Plaintiff asserts neither a claim for counterfeiting nor cybersquatting.  Nor can it.

It is clear that a "claim for trademark counterfeiting lies only against a defendant's counterfeit uses of a mark on the ***same goods or services*** as are covered by the plaintiff's registration of that mark."  *Playboy Enters. v. Universal Tel-A-Talk*, No. 96-cv-6961, 1998 WL 288423, at *4-5 (E.D. Pa. June 3, 1998) (citing 15 U.S.C. § 1116(d)(1)(B)(i)) (emphasis added).  Plaintiff's trademark registrations cover flooring products.  *See* Simpson Decl. at Exs. 1 and 2.  Plaintiff alleges that SCEA used its trademark in a video game.  This cannot support a counterfeiting claim.  *Playboy*, 1998 WL 288423, at *4-5 (denying for futility motion to add claim of counterfeiting because plaintiff "failed to allege defendants counterfeited the [plaintiff's] marks on the same goods or services covered by the marks' registrations"); *Carroll Shelby Licensing, Inc. v. Superperformance Int'l,*

18

*Inc.*, 251 F. Supp. 2d 983, 987-88 (D. Mass. 2002) (dismissing counterfeiting claim where plaintiff's registration did not cover defendant's goods).

Plaintiff similarly asserts no claim for cybersquatting.  Nor can it.  To assert such a claim, a plaintiff must allege that the defendant has registered a website domain name identical or confusingly similar to the plaintiff's mark.  *See* 15 U.S.C. § 1125(d); *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2009); *Garruto v. Longo*, No. 12-cv-2668, 2012 WL 1981838, at *5 (D.N.J. June 1, 2012).  There is no allegation that any defendant registered any domain name, let alone one identical or confusing similar to VIRAG or e Evolution VIRAG.  Plaintiff's claims for statutory damages under the Lanham Act should therefore be dismissed and/or stricken from the Complaint.  *See* Compl. ¶¶ 38, 44, 52.

Plaintiff also purports to seek treble damages under § 1117(b).  *See* Compl. ¶ D of the prayers for relief for the Second, Third, and Fourth Causes of Action.  The trebling of damages provided for in § 1117(b) is only available in cases of counterfeiting which Plaintiff does not and cannot allege.  *See* 15 U.S.C. § 1117(b).  This claim too should be dismissed and/or stricken from the Complaint.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss with prejudice Plaintiff's Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Dated:  November 3, 2014

Orrick, Herrington & Sutcliffe LLP

_____*s/Grace L. Pan*_____
Grace L. Pan
Lisa T. Simpson (*pro hac vice*)
Nicholas H. Lam (*pro hac vice*)
51 W. 52nd Street
New York, NY 10019
Tel:  212-506-5000
Fax:  212-506-5151
gpan@orrick.com
lsimpson@orrick.com
nlam@orrick.com
*Attorneys for Defendants Sony Computer*
*Entertainment America LLC and Sony*
*Computer Entertainment Inc.*